CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

AUG 10 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## for the
## Western District of Virginia

| | |
|---|---|
| Melinda Scott | ) |
| _____ | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No, 2:17CV10011 |
| Andrew Carlson | ) |
| _____ | ) |
| Defendant | ) |

### RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1. Judge Pamela Sargent asked me during the phone conference whether or not I had responded to the Plaintiff's motion for summary judgment that she had filed a while ago. I said that I had not done so, but that the Plaintiff's motion to strike is almost identical to her motion for summary judgment, & that, for that reason, my response to her motion to strike should be considered equally my response to her motion for summary judgment. That being said, I am now providing an actual response to her motion for summary judgment specifically, so that there will be no legal loopholes the plaintiff might try to use. I am thus sending as a distinct filing my response to her motion for summary judgment.

2. Plaintiff claims that the revenue of her business &, more specifically, of her videos is irrelevant. However, according to Judge Pamela Sargent during the phone conference, the plaintiff must provide as part of her initial disclosure in accordance with rule 26 the following: *"a computation of each category of damages claimed by the disclosing party—who must also make available for inspection & copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature & extent of injuries suffered"* Thus according to this law, there must be an actual basis of which to justify the category of damages that she is seeking, & the plaintiff's revenue for her business or the revenue

from her videos must certainly be taken into consideration as entirely relevant to this case. As cited in my response to her motion to strike, in the cases Walt Disney v. Video (1996) & Doehrer v. Caldwell (1980), the courts determined that actual revenues & actual damages are relevant for determining how much statutory damages if any should be awarded.

3.Plaintiff states that it is irrelevant that she has not preregistered the copyright for her three videos. As I mentioned in my response to her motion to strike, the law according to 17 U.S. Section 412 requires her videos to have their copyright registered in order for her to sue for statutory damages, & because she does not have them registered, she cannot sue me for statutory damages for her three videos. There is an exception in the law according to 17 U.S. section 106A(a) for needing copyright registration, but as I stated in my response to her motion to strike, this exception only applies to a visual work of art (which she claims her logo is). It does not apply to her three videos. Her lawsuit against me is for my distribution of her three videos specifically. According to federal law 17 U.S. Section 101, videos are not able to be considered visual works of art under the definition needed to warrant an exception to needing the copyright registration to proceed with her lawsuit, so that means that the exception for works of visual art does not apply to her three videos & she can therefore not sue me for statutory damages without copyright registration existing for those three videos.

4.Plaintiff says I lied when I said I was not aware of the three videos' copyright status. What I was saying is I was not aware of the three videos having copyright registration. I knew that copyright is automatic when works are created, but I did not think what I had done with her videos constituted a violation of her copyright since I thought what I had done was acceptable under fair use laws.

5.Plaintiff says that the amount she demanded in her letter is irrelevant, but I maintain it is relevant because it proves that as late as March 31st, she was only asking for $30,500 in statutory damages.

Thus, the amount she was asking for at that time was nowhere near the $75,000 threshold required.

6.I concede to the Plaintiff that her use of someone else's music in one of her videos did not infringe upon another's copyright. After I earlier stated that it did, I realized that youtube provides free music users can use with their videos without violating copyright. So I stand corrected on that point.

7.Plaintiff says in her motion for summary judgment "*In the defendant's response he affirms that at least three videos were distributed.*" The plaintiff is suing me for distribution of three of her videos specifically, so any other videos I may have distributed she cannot get statutory damages for in this lawsuit. When she says "at least" three videos, it makes it sound like she is opening herself up to the possibility of suing me for distribution of other videos of hers. But this cannot be done in this lawsuit.

8.Plaintiff claims that because I omitted a denial of posting her videos with her logo embedded into them, that I have waived my right to defend against that claim of hers & we must accept it as if it is established fact. However, that only applies when an answer to the complaint has been submitted. As of yet, no answer of mine to the plaintiff's complaint has been submitted to the plaintiff. Currently there is a pending motion to dismiss. If my motion to dismiss is rejected by the Judge, I will be required to send an answer to her complaint. When I send an answer, only then if I have failed to defend against it do I waive my right to defend against it. Therefore, I maintain I absolutely still have a right to defend against her false claim that her logo was used in the three videos that I redistributed on my channel.

9.Plaintiff claims that by including her videos in a public playlist on my youtube channel, that this is a violation of her copyright & that this constitutes distortion & mutilation under 17 US 106 A(a)(2). She asserts that her visual work of art was not intended to be distributed & displayed by a stalker. This is not based in the US law, but is clearly her own private interpretations of the law. There is nowhere in

the law that indicates that merely sharing a video constitutes copyright infringement or distortion & mutilation of said video. Youtube's terms of service clearly allow for me to include her & anyone's videos in my playlists so long as I do not actually load their videos to my channel without their permission. Her intention or purpose behind her creation of her videos is irrelevant to whether I have distorted & mutilated her work, since I have not altered her videos in any way shape or form (other than the remix I mentioned, but even so, the distortion & mutilation rule only applies to works of visual art, & videos as I mentioned before are excluded from being considered works of visual art according to 17 US section 401). Distortion & mutilation under the law's standard requires actual alteration, & not merely it being shared by someone the owner doesn't like. I did not distort or mutilate her three videos, nor did I distort or mutilate her logo.

10. Plaintiff asserts that my goal in distributing her videos was to malign her reputation but this is speculation on her part, & is 100% false. She is not a mind reader & she cannot speak for me as to what my intentions were. I know from my own thoughts, memories, & feelings, that that was not why I uploaded her videos to my channel. The reason I uploaded her videos is simply because I like her videos, & I like her, & I wanted to express & show my appreciation & support of her work by posting it. By posting her infomercial for her book, I showed I supported her book, & hoped people would buy her book. Thus I was actually advertising her book & business to try to help her business. During March, I also paid about $20 for her book of activities for taking children outdoors. I also did this to show my support of her and to help support her business. I posted the video of her children playing, because I thought it was cute & I liked hearing the plaintiff's voice & laugh in the video. I posted the video of her encouraging people to clean up trash from the environment, because I thought it was an inspiring message. So, contrary to the Plaintiff's assumptions & assertions about my intentions, my intentions & reasons for sharing her videos & uploading them to my channel were well intended & not done with any malice whatsoever.

11. Plaintiff says I have a hostile attitude toward her as evident by the 2 year protective order she has against me. She states that under Virginia Law, she had to show without a reasonable doubt that my stalking & threats were aimed at causing the plaintiff fear of bodily injury. That however is not true. According to the statute, only preponderance of the evidence is required, not without a reasonable doubt evidence. Furthermore, the statute only requires that a person <u>should</u> reasonably have known that their actions would reasonably cause someone to fear bodily injury in order for a protective order to be granted. In other words, a person's intent to cause someone to fear injury is not required to grant a protective order. All that is required to give me a protective order is that I <u>should</u> have known my actions would cause her to reasonably fear bodily injury. The fact is however, I did not know that my actions would cause her to reasonably fear bodily injury, & I can successfully defend myself in court on that point. Also, it is entirely reasonable to be angry & upset over someone frivolously suing you. The plaintiff is frivolously suing me, & is attempting to take $80,000 from me. This is essentially the plaintiff attempting to use the government to steal money from me. That is a hostile action against me that the plaintiff has initiated. The plaintiff has thus initiated a vicious attack on me legally. So it is reasonable that when a person is being attacked, they are hostile to their attacker. For example, if a woman is being raped, & she is trying to defend herself, the woman is hostile to her attacker. The word "hostile" is not necessarily a negative word. I am indeed "hostile" to the plaintiff since she is attacking me & hurting me in a manner that I deem very unfair & wrong of her to do to me. But I have never threatened to hurt her, or cause her bodily injury. The plaintiff by suing me for such a petty issue as she has done has intentionally sought to provoke, enrage, & entrap me. The plaintiff escalated the drama significantly between me & her by attacking me legally. The plaintiff's legal attacks have compelled me to take actions to defend myself from her attacks that I otherwise would not have taken. All the drama that the plaintiff is complaining about involving me since March 6th was brought on because the plaintiff attacked me with this lawsuit. Had the plaintiff not sued me, there would be no interactions between us. But now that there is this pending lawsuit against me from her, I am literally forced legally

to interact with her, which has caused me a high amount of stress, anxiety, & mental anguish, & it preoccupies a large amount of my daily conscious thought because of how massive its effect & influence on my life is. I have difficulty functioning in day to day life because of this lawsuit's negative effect on me. Being a pro-se litigant, the full burden of defending myself is on me, & that burden is very heavy & taking a huge toll on me mentally & physically.

12. Plaintiff asserts that I do not respect the plaintiff nor respect the protective order, because she says I have violated it, & that my ongoing violations of the protective order demonstrate an attitude of self serving behavior, arrogance, & hostility toward the plaintiff. On the contrary, the plaintiff has shown that she cares primarily about herself, & any opportunity she can get to try to take money from other people she will jump on, hence her many lawsuits against people this year for a large amount of money. This is a clear indication of self serving behavior on her part, as well as arrogance. Her legal actions directed towards me show undue hostility toward me in a way that is truly disturbing. As for myself, my actions were done to help protect myself from her malicious attacks against me, & to try to help her with her problems in her life. One can call this self serving behavior to defend myself from an attacker, but if it is, then it would be a valid form of self serving behavior. If I have violated the protective order, that does not necessarily mean that I do not respect the protective order or the plaintiff. The protective order makes the assertion that I am ordered to comply with its terms, & that if I do not comply, I may get fined or imprisoned. If a violation of a protective order is done by someone with the understanding that it may result in a punishment, & they are willing to accept the consequences of violation of a protective order should a court deem to impose them, then they are respecting the protective order by consenting to the court's authority to punish them if the order is violated. It must be made clear that not all government laws are justified, & what makes our country such a great country is that people have disobeyed some laws for the sake of a greater good, & submitted to the court's authority to punish them for violating a law, & as a result, they successfully

were able to change the laws of this country for the better. There is a good argument to make that protective orders are sometimes unconstitutional in their scope & power. At any rate, I most certainly respect the protective order, because it has caused me to not contact the plaintiff a lot which I otherwise would probably have done had there been no protective order. Thus, because of the protective order, she has had a lot of relief, since I have significantly reduced the amount of contact with her. The only contact I have with her now is primarily connected to this lawsuit. I show respect for the plaintiff because I apologized to her for treating her wrongly in 2016, & I took back the threats I had made in 2016 & promised I would never threaten those things ever again. & I have for the most part not contacted her, outside of correspondence with her about our legal issues that are currently going on. I have been very kind & compassionate to her even though she has been treating me horribly. My actions towards the plaintiff this year demonstrate a behavior motivated by my desire to make things right between me & the plaintiff, & to help her in her difficult situations that she is in. I have shown that I am willing to possibly get in trouble with the law if it means doing something that I believe will ultimately help my former friend in the long run. This is the complete opposite of selfish behavior.

13. Plaintiff says in her motion for summary judgment that the other videos on my youtube channel that I made were made with the goal to harass, intimidate, & humiliate her, & sabotage her reputation, & that I have an ongoing campaign to cause her loss of society, loss of consortium & alienation from others. She could make a valid argument that some of my videos were intimidating her, & if I am honest, I can agree that some of my videos were made to intimidate her. But I deny that my videos were done with the goal of humiliating her or the goal of sabotaging her reputation, or the goal of harassing her. I was aware that my videos on my youtube channel would likely cause her some level of emotional distress & grief, but I did not think that the level of distress & grief would be significant & her being distressed or grieved was not my purpose for making the videos. I knew that my videos could possibly cause some people to have a negative view of her reputation or that it might bring into question for

some people her honor, but I didn't make the videos for other people to watch. I made the videos specifically for her to watch. So it was not my intent for other people to see the videos but for only her to see them. This shows my intention was not to harm her reputation or bring into question her honor. I made them as public youtube videos that anyone could see, because that was the only way I thought I could talk to her without violating the protective order by directly contacting her or her friends. If I made public videos about her rather than to her, with the hope that she would see the videos & know I was wanting her to see the videos, I thought that perhaps that would not be a violation of the protective order. I stopped making public videos on my channel about her when other people began viewing them a lot. I would never want to cause the plaintiff to be in isolation, so the plaintiff's assertion that that has been my goal is entirely false. The plaintiff's personality is one of self-isolation when people do something she doesn't like. She cuts off friendships & family from her life very easily over minor petty issues. My attempts to involve myself in her life have been done to help her become a more loving & friendly person so that she doesn't cut off friendships & family relationships with people anymore so easily & so frivolously. So my motivations regarding the plaintiff are the exact opposite of trying to cause her isolation. Rather, I am trying to free her from the self-imposed isolation she constantly puts herself in all the time. As a result of my attempts to free her from her own isolation, she isolated herself even more to prevent me from being in her life, which is the exact opposite of what I want for her.

    14. I know that my approach in answering the plaintiff's claims is unconventional & potentially self-incriminating in certain regards. However, I am trying to be fair & honest in everything I say & to provide full disclosure for the court so they know the facts of the situation. The plaintiff distorts everything between me & her. So to help the court have a more balanced view of what is actually happening I felt it was right to provide in full this information. I believe that being transparent, open, and forthcoming to this extent will help convince the Judge to dismiss the plaintiff's lawsuit against me. I believe that because the plaintiff appealed to me stalking her as a justification for this lawsuit, that I

had to address all her claims about me stalking her fully & sufficiently. I apologize if the information I have provided was exhaustive, irrelevant, repetitive, or excessive, but I wanted to be thorough & make sure that everything the plaintiff said was adequately addressed. If the judge dismisses this case like I have motioned for, I ask the judge to please prevent the plaintiff from initiating similar frivolous lawsuits against me in the future. Also, I believe if she had to actually start paying to file her cases instead of having her fees waived for being so poor, she would stop abusing the legal system & she would stop initiating frivolous lawsuits against various parties.

Dated: 08/07/17

Signature: *Andrew Carlson*

Andrew Carlson

150 Willow Creek Avenue

Schenectady NY, 12304

## CERTIFICATE OF SERVICE

I, Andrew Carlson, do hereby certify that on this 7th day of August 2017, my response to the Plaintiff's motion for summary judgment was mailed to the Abingdon Division of the Western District Court of Virginia, & that I mailed & emailed a copy of my response to the Plaintiff's motion for summary judgment to the Plaintiff, Melinda Scott, via her PO BOX address, PO BOX 1133-2014PMB87, Richmond VA, 23218, & via her email address TCO.OutdoorRec@gmail.com.

*Andrew Carlson*

Sincerely,

Andrew Carlson